UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

RICHARD VANCE                                  CIVIL ACTION

VERSUS                                         NO: 11-745

OCEANEERING INTERNATIONAL, INC.                SECTION: R(4)


                         **ORDER AND REASONS**

    Before the Court is defendant Oceaneering International Inc's motion for summary judgment.[1]  Because plaintiff failed to provide adequate evidence of a causal connection between the nurse's alleged negligence and his injuries, the Court GRANTS defendant's motion.


**I.   BACKGROUND**

    In October 2010, Oceaneering International, Inc. ("Oceaneering") assigned Richard Vance to work in Equatorial Guinea.  On October 26, 2010, in preparation for this planned travel, plaintiff underwent a pre-placement physical examination and received immunizations at the Bourgeois Medical Clinic. Plaintiff asserts that his employer sent him to this particular facility.  Defendant, on the other hand, argues that plaintiff could have received his injections from any physician of his

---

    [1]    R. Doc. 10.

choosing.  The physical examination did not reveal any abnormalities.  Plaintiff then received multiple vaccinations, including three injections in his left arm.  According to the plaintiff, the nurse negligently administered these vaccinations, resulting in severe nerve injuries.  Plaintiff states that the nurse held the syringe "[l]ike an ice pick....[a]nd drew back and stabbed it into my arm."[2]  Mr. Vance indicates that the nurse administered two of the shots into his left shoulder and the third into his left bicep.  The needle did not hit plaintiff's bone, nor did it come out the other side of his arm.  Mr. Vance reported that upon receiving the injections, he felt pain radiating to his fingers and numbness.  He asserts that he told the nurse that he was experiencing pain.

   A few weeks later, plaintiff sought treatment from Dr. Uddin.  Dr. Uddin referred Mr. Vance to Dr. Leber, a neurologist.  During Dr. Leber's first examination of Mr. Vance on November 26, 2010, Dr. Leber saw definite first dorsal atrophy.  After several more weeks, plaintiff left for Equatorial Guinea.  Shortly after plaintiff's arrival, the job in Equatorial Guinea was cancelled, and plaintiff returned to the United States.  Upon his return, Mr. Vance again sought treatment from Dr. Leber.  On Mr. Vance's February 2, 2011 visit to Dr. Leber, Dr. Leber concluded that the immunizations plaintiff received from Bourgeois Medical Clinic

---

   [2]   R. Doc. 12-2 at 11.

were the cause of the damage to plaintiff's ulnar nerve.  But on Mr. Vance's February 25, 2011 visit, Dr. Leber withdrew that opinion.  He indicated that he noted marked atrophy at the time of the first visit after the injections, and therefore the atrophy must have pre-dated the injections.  Further, he explained that "it's almost impossible, if not definitely impossible, to injure the ulnar nerve by a shot in the left deltoid."[3]

Defendant now moves for summary judgment.  Defendant argues that the vaccinations did not cause plaintiff's injury, and therefore summary judgment is appropriate.  In addition to arguing that the plaintiff cannot meet its evidentiary burden on causation, defendant submitted the report of Dr. Donald Faust in support of its motion.  Dr. Faust concludes that it is "extremely unlikely" that the immunizations caused plaintiff's injuries.

Plaintiff opposes the motion.  In opposing the motion for summary judgment, the plaintiff relies on the testimony of Drs. Leber and Beaucoudray.  Plaintiff also submitted the report of Marlene Roman, a registered nurse, to establish the applicable standard of care and the nurse's deviations from that standard. In the report, Ms. Roman asserts that the placement of the injections, the length of the needle, and the failure to document plaintiff's complaint were all deviations from the Standards of

---

[3]   R. Doc. 10-4 at 2.

Nursing Practice. She gave no opinion on the causation of plaintiff's injuries.

## II. STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

Nurses who perform medical services are subject to the same standard as physicians in the context of a medical malpractice

action. *See Little v. Pou*, 975 So.2d 666, 674-75 (La. Ct. App 2008), *writ denied* 983 So.2d 920 (La. 2008)(citing *Cangelosi v. Our Lady of the Lake Reg'l Med. Center*, 564 So.2d 654, 661 (La. 1989) ("Nurses who perform medical services are subject to the same standards of care and liability as are physicians."). That duty is to exercise the degree of skill ordinarily employed, under similar circumstances, by members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with her best judgment, in the application of her skill to the case. *Id.* In order to recover for the negligence of a nurse, a plaintiff must prove by preponderance of the evidence: (1) the degree of care ordinarily exercised by nurses; (2) that the nurse failed to use reasonable care and diligence, along with her best judgment in the application of that skill; and (3) that as a proximate result of this failure, the plaintiff suffered injuries that would not otherwise have been incurred. *See* La. Rev. Stat. § 9:2794; *Martin v. East Jefferson Gen. Hosp.*, 582 So.2d 1272, 1276 (La. 1991)("The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care..., and must then establish a causal relationship between the alleged negligent treatment and the injury sustained."); *see also Braud v. Woodland Village L.L.C.*, 54 So.3d 745, 750 (La. Ct. App. 2010) ("Medical

malpractice claims are subject to the general rules of proof applicable to any negligence action: the plaintiff must prove a standard of care, a breach of the standard, causation, and damages.").

Generally, expert testimony is required to establish the applicable standard of care and whether or not that standard of care was breached. *Butler v. DePuy*, 876 So.2d 259, 262 (La. Ct. App. 2004) (citing *Davis v. Atchison*, 859 So.2d 931, 935 (La. Ct. App. 2003). But, there is an exception to this general rule for cases in which the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Thomas v. Southwest La. Hosp. Ass'n.*, 833 So.2d 548, 551 (La. Ct. App. 2002) *writ denied*, 842 So.2d 401 (La. 2003) (citing *Pfiffner v. Correa*, 643 So.2d 1228, 1230 (La. 1994)). Here, the nurse's alleged negligence in administering the injection does not amount to the obvious negligence that would permit the plaintiff to dispense with expert testimony on the applicable standard of care.

As to causation, the applicable test "is whether the plaintiff proved through medical testimony that it is more probable than not that the injuries were caused by the substandard care." *LeBlanc v. Barry*, 790 So.2d 75, (La. Ct. App. 2001) (quoting *Hoot v. Woman's Hosp. Foundation*, 691 So.2d 786, 789 (La. Ct. App. 1997), *writ denied*, 701 So.2d 209 (La. 1997)).

7

In support of its motion, defendant submits the report of Dr. Faust, which concludes that it is "extremely unlikely" that there is a causal connection between the immunizations and the Mr. Vance's nerves injuries. Dr. Faust specifically states that "[t]he anatomy of the arm, combined with the nerve conduction studies, would indicate that it's extremely unlikely that [Mr. Vance's] problems occurred from a needle stick as he described. It seems the neuritis pre-existed his immunization."[4] Dr. Faust's report also asserts that "[t]he onset of atrophy points against a specific insult on the date of immunization."[5] Although defendant includes this report, the thrust of defendant's argument is that plaintiff has not met his evidentiary burden concerning causation.

To establish causation, plaintiff relies on statements of Drs. Leber and Beaucoudray. Dr. Leber initially opined that the plaintiff's symptoms were due to the injection "based on the temporal relationship that [Mr. Vance] told me about the shot and his symptoms starting."[6] Dr. Leber, however, subsequently withdrew that opinion, and in his deposition testimony, Dr. Leber explained that "it's almost impossible, if not definitely impossible, to injure the ulnar nerve by a shot in the left

---

[4] R. Doc. 10-7 at 4.

[5] *Id.*

[6] R. Doc. 10-4 at 2.

deltoid."[7]  Further, during Mr. Vance's first visit to Dr. Leber approximately one month after the injections, Dr. Leber noted a marked atrophy in the plaintiff's hand.  Dr. Leber indicated that the atrophy, due to its advanced stage, must have pre-dated the immunizations.  Dr. Leber's testimony does not create an issue of fact as to whether it is more probable than not that the alleged substandard care caused plaintiff's injuries.

Dr. Beaucoudray's testimony does little more to assist plaintiff in meeting his evidentiary burden.  When asked for his opinion as to whether the needle the nurse used to administer the immunizations struck plaintiff's nerve and caused the ulnar neuropathy, Dr. Beaucoudray stated "[t]hat would be very tough to say.  I don't have – it would be pure speculation."[8]  He further explained that "there are a lot of variables, and I would be unable to give a clear-cut answer to that without [] speculation."[9]  Dr. Beaucoudray's "speculation" does not elevate the likelihood of a causal connection to the requisite level.  Dr. Beaucoudray also indicated that documented cases of nerve irritation from the actual injectiate, although rare, are possible.  Dr. Beaucoudray's statement that the possibility of

---

[7]    R. Doc. 10-4 at 2.

[8]    R. Doc. 12-3 at 5.

[9]    *Id.* at 6.

nerve irritation from the injectiate "is a potential issue"[10] is not sufficient to raise an issue on causation.  Furthermore, he and Dr. Leber agreed that the hospital could not have predicted a bad reaction to the injectiate, if that occured.

   The testimony of Drs. Leber and Beaucoudray does not elevate the possibility of a causal connection between the method of injection and plaintiff's injuries beyond the speculative level. Accordingly, plaintiff failed to establish that he would be able to satisfy his evidentiary burden of proving that the nurse's alleged deviations from the required standard of care caused him to suffer an injury that he would not otherwise have incurred. Because plaintiff has failed to meet this burden, the defendant is entitled to summary judgment.  *See, e.g., Thibodeaux v. Lafayette Gen. Surgical Hosp., LLC*, 38 So.3d 544 (La. Ct. App. 2010) (affirming grant of summary judgment when medical testimony submitted by plaintiff did not establish by a preponderance of the evidence that alleged substandard conduct caused plaintiff's damages); *Davis v. Atchison*, 859 So.2d 931 (La. Ct. App. 2003) (affirming grant of summary judgment, in part, because the evidence plaintiff submitted did not state that the actions of the physicians were the cause of plaintiff's claimed damages).

---

[10]   *Id.* at 7.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.

New Orleans, Louisiana, this 16th day of May, 2012.

_____*Sarah Vance*_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE